# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERT WAYNE SMITH, | ) |
|          Petitioner, pro se, | ) ) ) )   1:06CV489 |
| v. | ) ) |
| THEODIS BECK, Secretary of the Department of Correction, | ) ) ) |
|          Respondent. | ) ) |

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Respondent's motion for summary judgment (docket no. 6) on Petitioner's federal habeas petition. Also before the court is Petitioner's motion to conduct discovery (docket no. 11). The parties have responded to the respective motions and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. All dispositive motions must therefore be dealt with by way of recommendation. For the following reasons, Petitioner's request to conduct discovery will be denied. Furthermore, it will be recommended that the court grant Respondent's motion for summary judgment and dismiss the petition.

## BACKGROUND

Petitioner is a state court prisoner who, on February 28, 2005, in Forsyth County Superior Court, pled guilty to ten counts of breaking or entering as a habitual felon and was sentenced pursuant to a plea bargain to two consecutive terms of 101-131 months imprisonment, in cases 03 CRS 60604-07, 60134, and 37618. Petitioner was represented by Mr. Jason B. Crump, Assistant Public Defender, and did not appeal. Petitioner thereafter dated a pro se "Motion for Writ of Certiorari" September 9, 2005, and filed it in Forsyth County Superior Court on September 13, 2005. (Ex. 5) Petitioner also dated a pro se "Motion for Writ of Certiorari" September 9, 2005, and filed it in the North Carolina Court of Appeals on September 14, 2005. (Ex. 6) Petitioner also dated a pro se MAR September 9, 2005, and filed it in the North Carolina Court of Appeals, apparently in support of his certiorari motion. (Ex. 7) The North Carolina Court of Appeals dismissed Petitioner's certiorari motion on September 29, 2005, without prejudice to file an MAR in the Superior Court. (Ex. 8) Petitioner then filed his MAR in Forsyth County Superior Court on October 17, 2005. (Ex. 9) On October 27, 2005, the Honorable L. Todd Burke summarily denied both Petitioner's September 13, 2005, certiorari motion and his October 17, 2005, MAR, in the same order. (Ex. 10) Petitioner dated a pro se certiorari motion January 4, 2006, and filed it in Forsyth County Superior Court on January 6, 2006. (Ex. 11) The court treated the motion as an MAR and summarily denied it on February 3, 2006. (Ex. 12) Petitioner dated a pro se certiorari motion

2

February 14, 2006, and filed it in Forsyth County Superior Court on February 20, 2006. (Ex. 13) The court treated the certiorari motion as an MAR and summarily denied it on March 1, 2006. (Ex. 14) Petitioner filed another pro se certiorari motion in the North Carolina Court of Appeals on February 16, 2006. (Ex. 15) This certiorari motion was dismissed on February 23, 2006. (Ex. 16) Petitioner dated a pro se certiorari petition April 25, 2006, and filed it in the North Carolina Supreme Court on April 27, 2006. (Ex. 17) Petitioner dated his pro se federal habeas application form May 26, 2006, and filed it in this court on May 30, 2006.

**PETITIONER'S CLAIMS**

Petitioner raises four claims for relief in his habeas petition, all of which are difficult to discern. Petitioner contends that (1) he was convicted of being a habitual felon due to his point level and prior felonies; (2) the transcript says he pled guilty, he took an *Alford* plea by request of his attorney, and he questions his signature on the transcript; (3) the transcript of plea is misleading; and (4) there was evidence that would have resulted in a different outcome.

**ANALYSIS**

**Summary Judgment Standard**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially

3

coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

It is too glib, however, simply to say that the standard formulation for assessing summary judgment in the run-of-the-mill civil case applies in all habeas cases. For example, the usual summary judgment analysis contemplates accepting the evidence and all justifiable inferences from the evidence in the light most favorable to the non-movant. In the habeas context, however, if there is a contention that the evidence at trial does not support the underlying conviction, the appropriate

4

standard calls for viewing the evidence in the light most favorable to the prosecution and according the prosecution the benefit of all reasonable inferences from the evidence, and in that light, determining if any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). By way of another example, in a habeas claim of ineffective assistance of counsel, a federal court "must indulge a strong presumption that counsel's conduct was reasonable, and . . . the petitioner must overcome the presumption that the challenged conduct may have been sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Nevertheless, the point is that habeas cases are subject to a summary judgment analysis as are all civil cases. *See* Rule 11, Rules Governing Section 2254 Cases In The United States District Courts; *see also Maynard v. Dixon*, 943 F.2d 407, 412-13 (4th Cir. 1991) (FED. R. CIV. P. 56 applies to habeas proceedings); *but cf.* 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4268 (2d ed. 1988) ("The procedure of applications for habeas corpus for state prisoners is a confusing amalgam, to be found in a variety of different sources. There are a number of procedural provisions in the habeas corpus statutes themselves.").

Furthermore, because Petitioner filed his federal habeas petition after the April 24, 1996, enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA amendments to 28 U.S.C. § 2254 apply. Under the AEDPA amendments, no habeas application by a state court prisoner may be granted with

5

respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). In addition, factual determinations made by a state court are afforded a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

Section 2254 precludes *de novo* federal habeas corpus review of state court decisions on the merits of a petitioner's claim. *Bell v. Jarvis*, 236 F.3d 149,159-60 (4th Cir. 2000) (en banc) (overruling *Cardwell v. Greene*, 152 F.3d 331, 339 (4th Cir. 1998)). When faced with a state court decision that does not explicitly cite or apply federal law, the habeas court should conduct an "independent examination of the record and the clearly established Supreme Court law." *Bell,* 236 F.3d at 158. Nevertheless, the habeas court must still confine its review to whether the "result" of the state court decision "is legally or factually unreasonable." *Id.* at 163 (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases-- indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the *result* of the state-court decision contradicts them.") (first emphasis in original, second emphasis added).

A state court decision is contrary to Supreme Court precedent if it arrives at a conclusion opposite that of the Supreme Court on a question of law or decides the case differently from Supreme Court precedent based on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an unreasonable application of Supreme Court law "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409. The "unreasonable application" standard does not admit of easy definition. For example, Justice O'Connor, writing for a majority of the Court, has said that "[t]he term 'unreasonable' is no doubt difficult to define." *Williams*, 529 U.S. at 410. Nevertheless, more recently the Supreme Court has said that the

> unreasonable application prong of § 2254 (d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. In order for a federal court to find a state court's application of our precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable.

*Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted); *see also Penry v. Johnson*, 532 U.S. 782, 793 (2001) (stating that even if the habeas court determines that the state court decision applied federal law incorrectly, relief is only appropriate if the application was also objectively unreasonable); *Williams*, 529 U.S.

7

at 410 (stating that an *unreasonable* application of federal law is different from an *incorrect* application of federal law). Finally, even if the state court's adjudication is contrary to or an unreasonable application of Supreme Court precedent, a federal habeas court may not grant relief unless the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict."[1] *Penry,* 532 U.S. at 795 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). These standards will guide the analysis below.

Exhaustion

The court first notes that Respondent contends that Petitioner did not exhaust his state court remedies because he has not filed a petition for writ of certiorari for

---

[1] On direct review, a state appellate court may find a constitutional error harmless only if it is harmless beyond a reasonable doubt under the standard articulated in *Chapman v. California*, 386 U.S. 18, 24 (1967). In 1993, the United States Supreme Court made clear in *Brecht v. Abrahamson* that, with respect to non-structural errors, a federal habeas court reviewing a constitutional error must ask whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The *Chapman* standard is "more stringent" than the *Brecht* standard, *California v. Roy*, 519 U.S. 2, 6 (1996) (Scalia, J., concurring), meaning that the petitioner seeking relief has a higher burden under the *Brecht* standard of review than under the *Chapman* standard of review. The circuits appear to disagree over whether, on federal habeas review, the *Brecht* "substantial and injurious" standard of review has survived the passage of the AEDPA amendments. This circuit's court of appeals has taken the position that the *Brecht* standard of review has indeed survived the passage of the AEPDA amendments. *See, e.g., Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002) (stating that even if the state court's adjudication of Petitioner's claim was contrary to or an unreasonable application of Supreme Court precedent, a federal habeas court may not grant habeas relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict," subject to the limitation that if the court is in "grave doubt" as to an error's harmlessness, the court must grant relief) (quoting *Brecht*, 507 U.S. at 637). I note that in this case the court does not reach the *Brecht* question because the state court's adjudication was neither contrary to nor an unreasonable application of Supreme Court precedent.

8

review of the MAR court's October 27, 2005, order by Judge Burke denying his claims.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that an application for writ of habeas corpus shall not be granted unless the petitioner has first exhausted all available state court remedies); *Moseley v. Freeman*, 977 F. Supp. 733, 734-35 (M.D.N.C. 1997) (discussing the state court remedies exhaustion requirement).  Nevertheless, since "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state," 28 U.S.C. § 2254(b)(2), and because this court will recommend that summary judgment be entered in favor of Respondent on the merits, the court will not address the exhaustion issue further.

Claim I.  Petitioner's Claim Challenging His Habitual Felon Conviction

Petitioner first contends that he was somehow improperly convicted of being a habitual felon.  In support of this claim, Petitioner states:

> Defendant was convicted as being a habitual felon due to point level and prior felonies.  On the work sheet Defendant has [3 felonies 6 points] [18 misdemeanors none violent.] But it does not say which were uses [sic] to give Defendant total 27 points.

Petitioner seems to be arguing that the same prior felonies were used to obtain both his habitual felon status and his prior record level.  Petitioner raised the substance of his current contention in his September 13, 2005, certiorari motion and October 17, 2005, MAR filed in Forsyth County Superior Court.  The MAR court summarily denied this claim on the merits and alternatively because Petitioner did not timely serve and certify service to the prosecutor.  For the following reasons, the

9

court finds that the MAR court's alternative adjudication and denial on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented to the court. *See Hartman v. Lee*, 283 F.3d 190, 194 (4th Cir. 2002) (noting that even though the state court may not provide reasons for a decision on the merits, the decision is still entitled to deference if independent review of the law reveals that the result meets the standards established by § 2254(d)).

Petitioner's prior record level worksheet shows that he was credited with three prior Class H or I felonies. Under North Carolina law, when multiple convictions are imposed during the same calendar week of court only one can count as a prior conviction for prior record level purposes. *See* N.C. GEN. STAT. § 15A-1340.14(d). Moreover, N.C. GEN. STAT. § 14-7.6 prohibits the use of the same conviction to establish both habitual felon status and prior record level. As Respondent correctly notes, however, the laws do not require that the prior record level worksheet specifically identify which of Petitioner's multiple Class H or I felonies imposed on the three different dates were counted toward his prior record level status. In addition, there is nothing in either section 14-7.6 or section 15A-1340.14(d) "to prohibit the court from using one conviction obtained in a single calendar week to establish habitual felon status and using another *separate* conviction obtained the same week to determine prior record level." *State v. Truesdale*, 123 N.C. App. 639, 642, 473 S.E.2d 670, 672 (1996) (emphasis in original); *see also State v. Skipper*, 146 N.C.

10

App. 532, 537, 553 S.E.2d 690, 693 (2001) (citing *Truesdale*). Petitioner had 17 prior Class H felony convictions imposed in Forsyth County Superior Court on October 24, 1994. Only one of these counted as a prior felony conviction for his prior record level status. Petitioner also had two prior felony convictions, i.e., one Class H and the other Class I, imposed in Forsyth County Superior Court on July 24, 1995. Only one counted as a second prior felony conviction for his prior record level status. Petitioner also had two prior Class I felony convictions imposed in Forsyth County Superior Court on August 4, 1999. Only one counted as the third prior felony conviction for his prior record level status. Thus, Petitioner's prior record level worksheet correctly establishes that he had three prior Class H or I felonies for purposes of his prior record level status. Petitioner's August 4, 1999, felony conviction for breaking and entering in case 99 CRS 26108; his July 24, 1995, conviction for breaking and entering in case 95 CRS 166677; and his October 24, 1994, conviction for breaking and entering in case 94 CRS 29022 were used to obtain his habitual felon status. This counting left other Class H or I felonies from each of these three dates to properly establish Petitioner's prior record level status. Thus, there was no double counting of prior felonies used to obtain Petitioner's prior record level status and his habitual felon status.

Next, to the extent that Petitioner contends that he only had 18 prior misdemeanor convictions instead of 20 reflected on his prior record level worksheet, the court agrees with Respondent that even if this were true, it would make no

11

difference. To qualify for his prior record level VI status, Petitioner had to have a total of 19 or more prior record level points. N.C. GEN. STAT. § 15A-1340.14(c). This requirement means that in addition to Petitioner's six prior record level felony points (two for each of these prior Class H or I felonies), plus the one point he earned because the same elements were present in his current offense(s) as in any of his prior offenses, he only had to have 12 more prior misdemeanor points (one point for each misdemeanor) to reach 19 points. (*See* Ex. 3) Petitioner's prior record level worksheet shows 17 prior misdemeanor convictions. While three of these 17 appear to have been imposed during the same calendar week as other convictions, even if they are eliminated Petitioner still had 15 prior misdemeanor convictions, which gave him a total of 22 points when added to his 7 prior felony points. Thus, no matter how Petitioner's prior record level points are calculated, he still had 19 or more points, qualifying him for his prior record level VI status. In sum, the trial court made no error in convicting Petitioner as a habitual felon, and the MAR court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Thus, the court should grant Respondent's motion for summary judgment as to this claim.

Claim 2. Petitioner's Claim Challenging His *Alford* Plea

Petitioner next challenges his *Alford* plea of guilty. In support of this claim, he states:

> Transcript says, Defendant plead guilty, Defendant took Alford plea, by request of attorney, questions signature on transcript. Attorney told

> defendant due to record, it would be wise to take an Alford plea, or [receive] a life sentence. After defendant went to prison, he received paperwork from attorney, showing evidence that a conviction would not have been possible had defendant know[n] of evidence existence [sic]. There was one witness to crime and she did not identify defendant as being person she saw. All fingerprints were o[n] exterior surfaces.

This claim appears to be an attempt to assert ineffective assistance of trial counsel based on Petitioner's trial counsel's advice to him to offer a guilty plea when he could have pled not guilty. Petitioner raised the substance of this contention in his MAR. The MAR court summarily denied the claim on its merits and alternatively because Petitioner did not timely serve and certify service to the prosecutor. For the following reasons, the court finds that the MAR court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Under clearly established Supreme Court law, in order to prove ineffective assistance of counsel, Petitioner must establish that counsel's performance was deficient, and he was prejudiced by that deficient performance, meaning that but for the deficiency there was a reasonable probability that the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trail cannot be relied on as having produced a just result."). In criminal prosecutions, an attorney's duties to his client include "duties to consult with the defendant on important

13

decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 688. Moreover, to prove ineffective assistance of counsel in the guilty plea context, Petitioner must show a professional dereliction and a reasonable probability an objectively reasonable person in his shoes would not have pled guilty and would have insisted on going to trial, absent the alleged dereliction. *See Hill v. Lockhart*, 474 U.S. 52 (1985); *see also Ostrander v. Green*, 46 F.3d 347, 355-56 (4th Cir. 1995) (objective reasonable man test applied to determine whether petitioner would actually have insisted on going to trial), *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996); *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988); *see also United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988).

Petitioner has produced nothing more than conclusory allegations to support his claim that he was in a position to offer a plea of not guilty rather than a guilty plea. Petitioner's September 14, 2005, certiorari motion to the North Carolina Court of Appeals contains copies of the indictments, police reports, and fingerprint reports from the various break-ins for which he was charged and convicted, as well as a photographic identification report. If Petitioner had insisted on going to trial, this evidence would have been sufficient to convince a reasonable jury that Petitioner was guilty of the alleged charges, and even despite that one witness was not able to identify Petitioner from a photo line-up. The court further notes that if Petitioner had rejected the plea he faced a maximum possible 2871 months imprisonment at

14

trial, as opposed to the sentence he received of two consecutive terms of 101-131 months for his guilty plea. Thus, Petitioner has not shown how his counsel was derelict in advising him to plead guilty. That is, Petitioner has not shown that an objectively reasonable person in his position would have rejected the plea offer and insisted on going to trial. For all these reasons, this claim is without merit.

Claim 3. Petitioner's Contention that the Transcript of Plea is Misleading

Petitioner next appears to be arguing that his *Alford* plea was not made knowingly, voluntarily, or intelligently. In support of this claim, Petitioner states:

> On transcript of plea, it was misleading to the State that Defendant was more knowledgeable tha[n] he is. Defendant received a G.E.D. in 1982, after dropping out of school in the 10th grade. Therefore, it's impossible for Defendant to read or write at a 12th grade level, when he received no further schooling. In reality Defendant was an alcoholic and drug user for 30 years and taking medication [seroquil 500 mg and Cellexa 60 mg] to withstand life[']s pressures. Never received substance abuse treatment, the courts ha[ve] known about substance abuse since 1981.

Petitioner raised the substance of this claim in his state MAR, and the MAR court summarily denied the claim on its merits and alternatively because Petitioner did not timely serve and certify service to the prosecutor. For the following reasons, the court finds that the MAR court's denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

15

Under clearly established Supreme Court law, the representations of the defendant in a plea colloquy carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)*; Boykin v. Alabama*, 395 U.S. 238 (1969) (requirements for valid guilty plea). In the transcript of plea, Petitioner clearly stated that his education level was "10th." Petitioner also clearly stated on the transcript plea form that he was then taking the medications "seroquil" and "cellexar." Petitioner confirmed, however, he was able to hear and understand the trial judge's questions, that he understood every element of each charge, and that he freely entered the plea understanding what he was doing. The trial court listened to Petitioner's responses during the plea colloquy, observed his demeanor, and found as a fact that Petitioner was, among other things, competent to stand trial. The trial court's factual findings are presumed correct under 28 U.S.C. § 2254(e)(1), *Parke v. Raley*, 506 U.S. 20, 35 (1992) (stating that judgment and guilty plea forms are sufficient to obtain presumption of correctness), and Petitioner has failed to establish by clear and convincing evidence that any of the state court's factual findings are erroneous. He also fails to show that the trial court conducted an inadequate plea colloquy, nor has he established a reason to doubt the truth of his answers at the plea colloquy. Thus, Petitioner has not shown that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established Supreme Court law, nor has he shown that the state court's findings of fact were

unreasonable in light of the evidence presented in the state court proceedings. For these reasons, this claim is without merit.

Claim 4. Petitioner's Contention that There Was Evidence That Would Have Resulted in a Different Outcome

Petitioner next appears to be arguing that trial counsel was ineffective for failing to advise him to plead guilty when there was evidence that he was innocent. In support of this claim, Petitioner states:

> Evidence that would have resulted in a different outcome. After attorney sent Defendant paperwork, it was established that there was only one witness who did not identify defendant she saw [File No. 03 CRS 60604, IR #344824 Line up date 10-10-03]. Investigation officer says tool used to break in left metal shavings, tool defendant had was not damaged.] [sic] All fingerprints found on external surfaces, does not support breaking/entering. Conviction was obtained in violation of due process law [sic] and other constitutional provisions.

Petitioner is essentially rearguing his second contention that his lawyer was ineffective for failing to advise him to plead guilty when there was evidence that he was innocent. Petitioner's contention should therefore be denied for the same reasons given as to his second contention. Moreover, to the extent that Petitioner is asserting an insufficiency of the evidence claim separate from his ineffective assistance of counsel claim, this claim is also without merit. By entering his knowing, voluntary, and counseled guilty plea, Petitioner waived his antecedent constitutional right to challenge the sufficiency of the evidence against him. *See Tollett v. Henderson*, 411 U.S. 258 (1973). Thus, the court should grant Respondent's motion for summary judgment as to this claim.

17

Petitioner's Motion to Conduct Discovery

Finally, Petitioner seeks to conduct discovery in order to "help with claim that a conviction would not have been possible, had petitioner known of evidence." In support of this claim, Petitioner contends that "on no warrant is there a witness that saw Petitioner break in, steal, or be in possession of items reported missing." Petitioner contends that "[a]ll Petitioner's fingerprints were on exterior surfaces, the expert does not know for certain how long prints had been there, if they were impressed before or after crime. By prints being on exterior surface, does not support entering, steal, or carry away. Police officer T.M. Howes states that a tool found on Petitioner was not a match to evidence found at crime scene. Also Ms. Wanda Johnson clearly states she was unable to say that Petitioner was male that she saw on 9-22-03." Based on this alleged evidence, Petitioner seeks to conduct discovery of "supporting warrents [sic], indictments, fingerprint time of place, and witness statements."

Pursuant to Habeas Rule 6(a), a prisoner must seek leave of court and demonstrate good cause before he is entitled to any form of discovery in a federal habeas proceeding. Discovery is extremely limited in habeas proceedings. *See Bracy v. Gramley*, 520 U.S. 899 (1997). That is, "[i]t is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions . . . of the new [Federal Rules of Civil Procedure]." *Harris v. Nelson*, 394 U.S. 286, 296 (1969); *see also Moseley v. French,* 6 F. Supp. 2d 474, 479 (M.D.N.C.

1998). Petitioner has not shown good cause to entitle him to any form of discovery; therefore, Petitioner's request for discovery must be denied.

**CONCLUSION**

Accordingly, Petitioner's motion to conduct discovery (docket no. 11) is **DENIED**. Furthermore, it is **RECOMMENDED** that Respondent's motion for summary judgment (docket no. 6) be **GRANTED** and that this action be dismissed with prejudice.

_____
Wallace W. Dixon
United States Magistrate Judge

October 2, 2006